UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHRISTOPHER E. HOPE, SR.,

    Plaintiff,

v.                                          Case No. 5:13cv362/WS/CJK

WILLIE WALKER, et al.,

    Defendants.
_____/

## ORDER and
## REPORT AND RECOMMENDATION

This prisoner civil rights case is before the court upon defendants' motion to dismiss (doc. 37). Plaintiff subsequently filed a response in opposition (doc. 42) and a supplement to the response (doc. 45). Plaintiff then moved to amend his response. (Doc. 47). With leave of the court, defendants filed a reply to plaintiff's response. (Doc. 49). Plaintiff has now filed a "Motion for Leave to Reply" (doc. 50) and the proposed surreply (doc. 52). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon careful consideration of the record, the parties' submissions and the relevant law, the undersigned concludes defendants' motion to dismiss should be granted.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at South Bay Correctional Facility. Plaintiff initiated this lawsuit on October 23, 2013, by

filing a civil rights complaint under 42 U.S.C. § 1983.[1] (Doc. 1). On August 26, 2014, plaintiff filed a third amended complaint, the operative pleading in this action. (Doc. 19). Plaintiff's third amended complaint names five employees of Gulf Correctional Institution ("Gulf CI") as defendants: Officer Willie Walker; Officer Nathaniel Morgan; Lieutenant Shane Semmes; Sergeant Robberson; and Officer Taylor. (Doc. 19, p. 1-2).[2]

Plaintiff's third amended complaint contains the following factual allegations. On March 24, 2013, plaintiff was placed in confinement at Gulf CI for a disciplinary report ("DR") written by Officer Page. (*Id.*, p. 7). Plaintiff was subsequently placed on the "DR squad" under the supervision of Officer Walker. (*Id.*, p. 7-8). Plaintiff asserts Officer Walker harassed him throughout his time on the DR squad. (*Id.*, p. 8). On the last day plaintiff was scheduled to be on the DR squad, he did not report to the DR squad location because his name was not placed on the callout sheet. (*Id.*). On the morning of March 27, 2013, Officer Walker entered plaintiff's assigned dorm and told plaintiff to wait for him on the bench outside the Captain's Office. (*Id.*). After several hours of waiting, Officer Morgan appeared and informed plaintiff he had been given a DR for disorderly conduct. (*Id.*). Plaintiff was subsequently taken to confinement by Officer Taylor. (*Id.*).

On March 29, 2013, Officer Walker entered confinement and, without justification, sprayed plaintiff with chemical agents. (*Id.*, p. 8-9). On June 6, 2013,

---

[1] Under the "prison mailbox rule," a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988).

[2] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

Case No. 5:13cv362/WS/CJK

plaintiff was walking back from the chow hall when he encountered Officer Walker on the sidewalk. (*Id.*, p. 9). Officer Walker started harassing plaintiff in an effort to provoke plaintiff into "saying or doing something wrong." (*Id.*). After plaintiff asked Walker why he was sprayed with chemical agents, Walker stated "we're going to get over this one way or the other" and "it's not over with." (*Id.*, p. 9-10). Officers later entered plaintiff's dorm and ordered him into the sally-port of the dorm. (*Id.*, p. 11). Lieutenant Semmes directed plaintiff to hold his hands up so he could be searched for weapons. (*Id.*). After the search, Semmes handcuffed plaintiff. (*Id.*). The handcuffs were so tight they left marks on plaintiff's wrists. (*Id.*). Officer Taylor then grabbed plaintiff's left arm and walked him towards the door leading to confinement. (*Id.*, p. 13). Just before Taylor and plaintiff got to the confinement door, Officer Walker punched plaintiff in his lower jaw and told him to "show out now." (*Id.*, p. 11, 13). Officer Morgan then pushed plaintiff "up against the laundry room door." (*Id.*, p. 11, 13). "[T]hree seconds later Sgt. Robberson grabbed [plaintiff's] right lower leg and pulled [his] leg out from under [him], making [him] fall to the ground hitting [his] head and chest on the ground." (*Id.*, p. 13). An unknown lieutenant told the officers to stop. (*Id.*). Prison officials took pictures of plaintiff's wrists "[b]ut there was nothing done of the incident and there was never an inspector to investigate" the matter. (*Id.*, p. 11). As a result of these incidents, plaintiff asserts he suffers from blurred vision and pain in his jaw. (*Id.*, p. 10-11, 12).

Based on these allegations, plaintiff claims the defendants violated his rights under the Eighth Amendment. (*Id.*, p. 15). Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, p. 14). Plaintiff also requests that criminal charges be brought against the defendants. (*Id.*, p. 15).

On June 16, 2015, defendants moved to dismiss the complaint, arguing: (1) plaintiff failed to exhaust his administrative remedies before bringing this action; (2) plaintiff failed to state a claim for retaliation; (3) plaintiff's allegations of verbal harassment do not constitute an Eighth Amendment violation; and (4) plaintiff's request to have the defendants criminally charged is improper. (Doc. 37). Plaintiff filed a response in opposition, asserting he exhausted his grievances before filing suit and he did not intend to bring a claim for retaliation. (Doc. 42). Plaintiff filed a supplement to his response which included a copy of the grievance plaintiff alleges exhausted the administrative remedy process. (Doc. 45). Defendants subsequently requested leave to file a reply to plaintiff's response (doc. 44), which was granted (doc. 46). Defendants filed their reply to plaintiff's response on July 17, 2015. (Doc. 49).

In addition to defendants' motion to dismiss, plaintiff's motion to amend his response in opposition (doc. 47) and motion to file a surreply (doc. 50) are now pending before the court. Plaintiff's motion to amend his response in opposition claims the original response was difficult to read. (Doc. 47). Plaintiff's amended response is identical to the original response, except the original response included witness statements from two DR investigations. (Docs. 42, 48). Plaintiff's motion to amend his response will be granted to the extent that the court will consider both filings when ruling on defendants' motion to dismiss.

Plaintiff also requests that he be allowed to file a surreply explaining why his complaint should not dismissed based on a failure to exhaust administrative remedies. Although the filing of a surreply is not normally allowed, to ensure the proper resolution of defendants' motion to dismiss, plaintiff's motion (doc. 50) will be

granted.

## DISCUSSION

Exhaustion Requirement

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  28 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory pre-condition to suit. *Booth v. Churner*, 532 U.S. 731, 739 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 534 U.S. at 524.  Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth*, 532 U.S. at 734.  The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See id.* at 741 n.6; *McCarthy v. Madigan*, 503 U.S. 140 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998).  Moreover, the PLRA requires "proper exhaustion," so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81 (2006); *see also id.*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system

will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). A court must dismiss an action if satisfied that the plaintiff failed to properly exhaust his available administrative remedies prior to filing suit. *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000); *Alexander*, 159 F.3d at 1325-26.

The grievance procedures promulgated by the Florida Department of Corrections ("FDOC") require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. FLA. ADMIN. CODE r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010).

Procedure for Ruling on Motion to Dismiss for Failure to Exhaust Administrative Remedies

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). The court held that the defense of failure to exhaust should be treated as a matter in abatement. *Id*. at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendants' motion, and those in the plaintiff's response. *Id*. If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, the plaintiff's allegations having been taken as true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

<u>Plaintiff's Administrative Grievances</u>

Defendants' motion to dismiss contends plaintiff failed to exhaust his administrative remedies because he never filed any grievance appeals to the Office of the Secretary of the FDOC. (Doc. 37, p. 6). Defendants attached two declarations to their motion to support the assertion that plaintiff failed to exhaust his administrative remedies. The first declaration, from Grievance Coordinator Ena Adderly, states that all of the formal grievances plaintiff submitted were either denied or returned without action. (Doc. 37-1). The second declaration is from Correctional Services Administrator Jacqueline Adams; Adams states the Florida Department of

Corrections' Central Office has not received any grievance appeals from plaintiff. (Doc. 37-2). In response, plaintiff claims that on June 12, 2013, he filed an "appeal grievance" (#1306-109-021) to the classification department that exhausted his administrative remedies. (Doc. 42, p. 2-3).

Plaintiff has provided the court with a copy of the grievance he claims exhausted his administrative remedies. The grievance, dated June 12, 2013, is on a form provided by the FDOC labeled "Request for Administrative Remedy or Appeal." (Doc. 45, p. 4). By checking one of three boxes, an inmate can indicate whether the grievance is directed to the Warden, the Assistant Warden, or the Secretary of the FDOC. (*Id.*). Although plaintiff identified the Warden as the intended recipient of the grievance by checking the box labeled "Warden," he also handwrote "Appeal" on the top of the grievance. (*Id.*). In the body of the grievance, plaintiff claims a DR plaintiff received contained errors and that Officer Walker struck plaintiff. (*Id.*).

The warden responded to plaintiff's grievance on July 9, 2013. (Doc. 45, p. 3). In reference to plaintiff's claim that Officer Walker struck him, the grievance response stated "[y]our allegation of staff abuse has been reported to [the] Inspector General's Office for further investigation." (*Id.*). After addressing plaintiff's complaints concerning disciplinary reports, the response notified plaintiff that his grievance was denied. (*Id.*). The final portion of the grievance response informed plaintiff of the availability of further review:

> You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by 33-103.007(3) (a) and (b), and forwarding your complaint to the Bureau of Policy Management and Inmate Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

Case No. 5:13cv362/WS/CJK

(*Id.*).

Plaintiff's initial response to defendants' motion to dismiss suggested the grievance may not have been processed by prison staff because plaintiff accused a prison guard of using excessive force. (Doc. 42, p. 2-3). It is clear, however, that prison officials both received and responded to the grievance. (*Id.*, p. 3). Next, plaintiff claims he inadvertently checked the box indicating the grievance was intended for the Warden rather than the Office of Secretary and this mistake should be viewed as a scrivener's error. (Doc. 52, p. 3). Plaintiff asserts that because he wrote "appeal" on the top of the grievance form, it should have been treated as an appeal by prison officials and forwarded to the Office of the Secretary. (*Id.*). Plaintiff claims "there was [no] reason 'why' the warden or [assistant] warden should not have sent the 'appeal' 'grievance' to the office of the secretary of the (F.D.O.C.)."[3] (*Id.*, p. 4).

Although plaintiff stresses that he intended to file a grievance appeal, prison officials cannot be faulted for sending the grievance to the Warden when plaintiff checked the box indicating the Warden was the intended recipient of the grievance. Furthermore, the response plaintiff received to his June 12, 2013 grievance clearly informed him of the availability of further review and the procedure for filing an

---

[3] To support his claim that his grievance was an appeal that should have been sent to the Office of the Secretary, plaintiff claims the form his June 12, 2013 grievance is on–form DC1-303–is "for appeal use's [sic] only." (Doc. 52, p. 6). FDOC regulations, however, clearly provide that "[w]hen an inmate decides to file a formal grievance, he or she shall do so by completing Form DC1-303, Request for Administrative Remedy or Appeal[.]" FLA. ADMIN. CODE r. 33-103.006(1). The instructions section of the DC1-303 form provides that "[t]his form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary[.]" (Doc. 45, p. 4).

Case No. 5:13cv362/WS/CJK

appeal with the Office of the Secretary.  Although plaintiff could have corrected his "scrivener's error" and simply filed an appeal with the Office of the Secretary, he did not.

Plaintiff also asserts that the grievances he wrote "did nothing" and the Warden or Assistant Warden always "fall on the side of there [sic] officers and denied everything I wrote to them for help[.]"  (Doc. 52, p. 3).  Plaintiff's belief that the administrative remedy process was futile, however, does not relieve him of the obligation to complete the process and file an appeal with the Office of the Secretary.  Likewise, the referral of plaintiff's allegations to the Inspector General's Office does not eliminate the requirement that he exhaust his administrative remedies.  *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) ("[T]he exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile."); *Wimberly v. Nw. Fla. Reception Ctr.*, No. 5:10cv301/RS/MD, 2011 WL 318044 at *3 (N.D. Fla. Jan. 4, 2011) (citations omitted) ("The exhaustion process is mandatory, and cannot be waived even when the process is futile or inadequate.").  Because plaintiff did not file a grievance appeal to the Office of the Secretary concerning the allegations raised in his complaint, he failed to exhaust the administrative remedies available to him and this case should be dismissed.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) ("PLRA exhaustion requirement requires proper exhaustion").

Accordingly, it is ORDERED:

1.     Plaintiff's motion to amend his response to defendants' motion to dismiss (doc. 47) is GRANTED to the extent indicated in this order.

2.     Plaintiff's "Motion for Leave to Reply" (doc. 50) is GRANTED.

Case No. 5:13cv362/WS/CJK

And it is respectfully RECOMMENDED:

1. That defendants' motion to dismiss (doc. 37) be GRANTED and plaintiff's claims against the defendants be DISMISSED WITHOUT PREJUDICE.

2. That the clerk be directed to close the file.

At Pensacola, Florida, this 18th day of August, 2015.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S.Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.